# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| EDEKKA LLC,<br>    *Plaintiff*,<br><br>v.<br><br>3BALLS.COM, INC., et al.<br>    *Defendants*. | CASE NO. 2:15-CV-541 JRG<br>**(LEAD CASE)** |
| EDEKKA LLC,<br><br>  Plaintiff,<br>v.<br><br>E REVOLUTION VENTURES, INC., et al.<br><br>  Defendants. | CASE NO. 2:15-CV-585 JRG<br>**(LEAD CASE)** |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are multiple Rule 12(b)(6) Motions to Dismiss under § 101 in Case Nos. 2:15-cv-541 and 2:15-cv-585. On August 31, 2015, the Court converted all of these motions to Rule 56 Motions for Summary Judgment (Dkt. No. 82 in Case No. 2:15-cv-541; Dkt. No. 7 in Case No. 2:15-cv-585.) The Court conducted a hearing on such motions and heard oral argument from the parties on September 10, 2015. For the reasons set forth below, the Court **GRANTS** Defendants' Motions and holds that the challenged claims of the patent-in-suit are ineligible for patent protection on the ground that they are directed to unpatentable subject matter.

1

**BACKGROUND**

On April 24, 2015, Plaintiff eDekka LLC ("eDekka") filed actions against multiple defendants asserting infringement of claims of U.S. Patent No. 6,266,674 ("the '674 Patent") titled "Random Access Information Retrieval Utilizing User-Defined Labels." On July 1, 2015, the Court consolidated these actions under the lead case. (Dkt. No. 9 in Case No. 2:15-cv-541.) On August 28, 2015, the Court consolidated additional actions under a different case. (Dkt. No. 6 in Case No. 2:15-cv-585.) After the first consolidation, Defendant Action Envelope & Printing Co., Inc. ("Action Envelope") filed a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim seeking dismissal on the basis that the claims of the '674 Patent are not patent eligible under 35 U.S.C. § 101. (Dkt. No. 8 in Case No. 2:15-cv-543.)[1] Because the parties have submitted, and the Court has considered, matters outside of the pleadings, pursuant to Rule 12(d), the Court converted the motion to a motion for summary judgment under F.R.C.P. 56. (Dkt. No. 82 in Case No. 2:15-cv-541; Dkt. No. 7 in Case No. 2:15-cv-585.)

At a general level, the '674 Patent relates to storing and labeling information. Claims 1–16 are method claims, and claims 17–52 are apparatus claims. Action Envelope challenges the eligibility of all 52 claims of the '674 Patent. More specifically, Action Envelope contends that the patent encompasses only an abstract idea of organizing information that is not directed toward a specific machine or limited in any meaningful way.

---

[1] Multiple defendants filed comparable motions. These defendants include Columbia Sportswear Company, Balsam Hill, LLC, Cole Haan LLC, The Walking Company Holdings, Inc., Mattress USA, Inc., Forever 21, Inc., Cymax Stores USA, LLC, AM Retail Group, Aldo U.S., Inc., ASICS America Corporation, Jockey International, Inc., and Guess?, Inc. These motions make similar arguments, and the Court will address Action Envelope's Motion as the exemplar motion.

In its Complaint, eDekka references claim 1 as an example of an infringed claim. Action Envelope's motion focuses heavily on claim 1 and claim 3. Asserted independent claim 1 of the '674 Patent provides as follows:

**1.** Method for storing information provided by a user which comprises:
    in response to user input, receiving and storing information;
    in response to user input, designating the information as data while the information is being received;
    in response to user input, designating at least a portion of the information as a label while the information is being received;
    in response to user input, traversing a data structure and providing an indication of a location in the data structure;
    in response to user input, storing the label at the location in the data structure; and
    associating the label with the data.

Asserted independent claim 3 of the '674 Patent provides as follows:

**3.** Method for storing information provided by a user which comprises:
    in response to user input, receiving and storing information;
    in response to user input, designating the information as data while the information is being received;
    in response to user input, conveying the stored information to the user and designating at least a portion of the stored information as a label while the stored information is being conveyed;
    in response to user input, traversing a data structure and providing an indication of a location in the data structure;
    in response to user input, storing the label at the location in the data structure; and
    associating the label with the data.

As discussed above, claim 2 and claims 4–16 are also method claims; upon reviewing these claims, the Court concludes that detailed analysis of these claims would not affect the ultimate outcome. Accordingly, the Court centers its analysis on claim 1 and claim 3. Claims 17–52 have been considered collectively in the Court's analysis.

# DISCUSSION

## A. Summary Judgment Standard under Rule 56

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment can satisfy its initial burden of establishing its right to judgment by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A "principal purpose[] of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24.

Patent eligibility under § 101 is an issue of law, but the legal conclusion may contain underlying factual issues. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Under the limited circumstances of this case, there are no material factual disputes that prevent the Court from deciding Action Envelope's motion pursuant to Rule 56.

Additionally, the relevant facts of this case demonstrate that claim construction is unnecessary. In certain circumstances, claim construction is not a pre-requisite to a § 101 determination. *Bancorp Servs., L.L.C. v. Sun Life. Assur. Co. of Canada (U.S.)*, 687 F.3d 1273, 1274 (Fed. Cir. 2012). eDekka asserts that a multitude of likely claim construction issues exist. (*See* Pl.'s Resp. at 17.) However, the only proposed claim construction issue that eDekka describes with specificity is its dispute of Action Envelope's interpretation of the term "label."[2]

---

[2] In eDekka's Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment, it argues that the term "traversing a data structure" may require claim construction. eDekka does not clearly provide a proposed construction and instead simply suggests that the term could be construed in a manner that requires computer software. This suggestion does not give rise to a need for claim construction or impact the Court's analysis.

(*Id.* at 16–17.) eDekka seeks to limit Action Envelope's characterization of the term. The Court concludes that, even if it did accept eDekka's proposed construction of "label," this construction would not alter the Court's analysis under § 101.

## B. Patentable Subject Matter Under 35 U.S.C. § 101

### 1. Legal Standard

35 U.S.C. § 101 provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

In deciding *Alice Corporation Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014) ("*Alice*"), the Supreme Court addressed a series of cases concerning the patent eligibility of software claims under 35 U.S.C. § 101. *See Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) ("*Myriad*"); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) ("*Mayo*"); *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218 (2010) ("*Bilski*"). In *Alice*, the Court reiterated that the right of inventors to obtain patents, as codified in § 101, "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." 134 S. Ct. at 2354 (citing *Myriad*, 133 S. Ct. at 2116).

In determining whether to apply this exception under § 101, courts "must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354. To make that distinction, courts apply the two-step test originally articulated in *Mayo* and reaffirmed in *Alice*. This test requires the Court to first "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Id.* at 2355. If the challenged claims satisfy this "ineligible concept" step, the court must then "determine whether the additional elements 'transform the nature of the

5

claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1296–97). In this "inventive concept" step, the Court considers the elements of each claim both individually and "as an ordered combination" in order to determine if an element or combination of elements within the claims are "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.*

**2. Analysis**

In order to prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step and subsequently fail the "inventive concept" step of the *Alice* test. In this case, Action Envelope asserts that the claims in the '674 Patent fail both steps. First, Action Envelope argues that the claims are directed to the patent-ineligible abstract idea of storing and labeling information. Second, Action Envelope argues that the claims contain no inventive concept that transforms their nature into a patent-eligible application.

**a. Claims 1 and 3**

Here, the Court finds that the asserted claims are directed to the abstract idea of storing and labeling information. Claim 1 recites a method of receiving and storing information, designating a portion of the information as data, and designating a portion of the information as a label. '674 Patent at 18:3–19. The method also encompasses marking the location of the data and storing it in a data structure, as well as associating the label with data. *Id.* The data structure is not described with any particularity. *Id.* Claim 3 includes the additional aspect of conveying the stored information to the user. *Id.* at 23–38.

As summarized above, the claimed idea represents routine tasks that could be performed by a human. While the generic requirement of a "data structure" is included, Claim 1 essentially describes the common process of receiving, labeling, and storing information, while Claim 3

encompasses retrieving such information.

eDekka contends that the claims are not directed toward an abstract idea because they improve the functioning of technology. (Pl.'s Resp. at 11.) Specifically, eDekka argues that the '674 Patent improves a computer's function "because it creates a structure that substantially reduces the time to retrieve information and the amount of information that must be retrieved." (*Id.*) The Court disagrees. The Court concludes that, under the first step of the analysis, the claimed idea is directed toward an ineligible concept which is abstract.

Because the claimed methods are directed toward an abstract idea, the Court must next determine whether an inventive concept exists that is sufficient to transform the claims into patent-eligible subject matter. Such transformation requires more than simply stating the abstract idea "while adding the words 'apply it.'" *Mayo*, 132 S. Ct. at 1294.

eDekka asserts that the terms of the '674 Patent tie it to a special-purpose computer that limits the scope of the claims. (Pl.'s Resp. at 13.) Here, generic terms are used throughout the claims, such as "data structure," "data," "input," and "label." However, the '674 Patent does not claim the process of generating user-defined labels to locate and identify stored information in a manner that limits its use to a particular structure or machine. "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life. Assurance. Co. of Canada (U.S.)*, 687 F.3d 1273, 1278 (Fed. Cir. 2012). The inclusion of terms that may vaguely allude to computer-based activity does not suffice to meaningfully restrict the '674 Patent from preempting the abstract idea itself.

Further, eDekka acknowledges that the claim language does not expressly require a

computer.[3] eDekka instead asks the Court to find that a person having ordinary skill in the art "would read the claim to require custom written software" to receive the information and then categorize certain portions as data and other portions as labels. (Pl.'s Sup. Brief at 1–2.) eDekka then argues that a person having ordinary skill in the art would not interpret the claims as capable of human performance. (*Id.* at 3.) eDekka cites two expert declarations in an attempt to support these contentions, but the declarations are extremely conclusory and, in truth, provide little support. (Sherwood Decl., Barnett Decl.) The Court declines to rewrite the claims in the manner eDekka suggests. The '674 Patent claims at issue "amount to nothing significantly more than an instruction to apply the abstract idea of [storing, labeling, and retrieving information] using some unspecified, generic computer." *Alice*, 134 S. Ct. at 2360 (internal quotation marks omitted).

Finally, eDekka argues that the claims do not preempt the abstract concept of storing and labeling information because the '674 Patent itself describes alternative methods of storing and labeling information upon which the current claims improved. (Pl.'s Resp. at 15.) The Court disagrees. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1271, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."). The challenged claims, considered both independently and as an ordered combination, are not meaningfully limited in a manner that would prevent eDekka from obtaining a monopoly over the abstract idea itself.

The Court finds that no inventive concept exists to transform the claimed abstract idea into a patent-eligible concept.

**b. Claims 17–52**

Claims 17–52 are apparatus claims, the majority of which mirror the language of the

---

[3] At the September 10, 2015 hearing on this matter, counsel for eDekka stated that "The claims do not…expressly state a computer." (Hr'g Tr. 12:22–23 (non-final).)

method claims while adding "means for" to each step. '674 Patent at 20:35–24:17. eDekka argues that the apparatus claims provide additional features or meaningful limitations. (*See* Pl.'s Resp. at 9–10, 12.) The Court disagrees. *Accenture Global Servs., GmbH v. Guidewire Software Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) ("Because the system claim and method claim contain only minor differences in terminology [but] require performance of the same basic process, they should rise or fall together." (internal citations omitted)). Accordingly, and for the same reasons stated above, the Court concludes Claims 17–52 are also ineligible for patent protection.

## CONCLUSION

For the reasons set forth above, the Court holds that the claims of the '674 Patent are ineligible under 35 U.S.C. § 101 and therefore **GRANTS** Defendants' Motions for Summary Judgment. The Court also finds that the prevailing parties herein shall include all defendants who have not settled or been dismissed as of this date and who filed or joined a motion to find the patent-in-suit ineligible for patent protection under 35 U.S.C. § 101 as of this date.

**So ORDERED and SIGNED this 21st day of September, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE