# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| **EDEKKA LLC**, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. 2:15-CV-541 JRG |
| **3BALLS.COM, INC., et al.**, | § § § | **(LEAD CASE)** |
| *Defendants*. | § | |
| **EDEKKA LLC**, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. 2:15-CV-585 JRG **(LEAD CASE)** |
| **E REVOLUTION VENTURES, INC., et al.**, | § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants'[1] Consolidated Motion for Attorneys' Fees and Brief in Support ("Mot.," Dkt. No. 105)[2]. For the reasons set forth below, the Court **GRANTS** Defendants' Motion and holds that this case is "exceptional" under 35 U.S.C. § 285.

## BACKGROUND

Plaintiff eDekka LLC ("eDekka"), a non-practicing entity based in Plano, Texas, has sued a large number of defendants in this Court alleging infringement of U.S. Patent No. 6,266,674 ("the '674 Patent") titled "Random Access Information Retrieval Utilizing User-

---

[1] Those Defendants joining in this Motion are reflected in the record. The Court notes that not all defendants have so moved and some who joined earlier have later withdrawn their joinder.
[2] All citations to the record refer to consolidated case number 2:15-cv-541 unless otherwise indicated.

1

Defined Labels." The '674 Patent relates to storing and labeling information and discloses a preferred embodiment that includes a cassette tape recorder with multiple buttons, a microphone, and a speaker. *See* ('674 Patent at Fig. 1.) The majority of eDekka's suits stemming from the '674 Patent target online retailers that offer a shopping cart feature on their e-commerce websites. It is this shopping cart functionality that eDekka alleges infringes the '674 Patent.[3]

In 2014, eDekka filed lawsuits against approximately 130 defendants alleging infringement of the '674 Patent. In April and May of 2015, eDekka filed lawsuits against 89 additional defendants alleging infringement of the '674 Patent. *See* (Dkt. No. 33 at 2–4.) The current motion arises from the 2015 actions, which the Court previously consolidated into the above-captioned cases.

Numerous defendants in the two consolidated actions filed motions to dismiss under 35 U.S.C. § 101, contending that the '674 Patent was directed to unpatentable subject matter under *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014). On September 10, 2015, the Court heard argument on the defendants' numerous § 101 motions. On September 21, 2015, the Court granted defendants' motions and held that the claims of the '674 Patent were patent-ineligible under § 101. ("§ 101 Opinion," Dkt. No. 100.) Defendants then filed the present motion asking this Court to find the above-captioned cases "exceptional" under 35 U.S.C. § 285.

## LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing

---

[3] For example, eDekka's Complaint against Defendant Action Envelope & Printing Co., Inc. states: "Particularly, Defendant makes, uses, provides, and/or offers Checkout, Shopping Cart, and/or Shopping Bag functionality on their website www.envelope.com and www.actionenvelope.com for customers in a way that infringes the '674 patent ("Accused Instrumentality")." (Dkt. No. 1 at 4, Case No. 2:15-cv-543.)

2

law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756; *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) ("[T]he determination of whether a case is 'exceptional' under § 285 is a matter of discretion."); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period."). "After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate," which is within the Court's discretion. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (citations omitted). Ultimately, a party must prove entitlement to attorney fees only by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

Significantly, sanctionable conduct is not the standard for awarding fees under § 285. *Id.* at 1756. "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757.

## DISCUSSION

Defendants assert that this case should be found "exceptional" under § 285 for two reasons: (1) eDekka's case was objectively unreasonable; and (2) eDekka litigated in an unreasonable manner. (Mot. at 7, 13.) The Court agrees.

3

**I.     eDekka's § 101 Position Was Objectively Unreasonable**[4]

As noted above, the '674 Patent relates to storing and labeling information. Asserted independent claims 1 and 3 are representative of all claims of the '674 Patent. Asserted independent claim 1 of the '674 Patent provides as follows:

> 1. Method for storing information provided by a user which comprises:
>     in response to user input, receiving and storing information;
>     in response to user input, designating the information as data while the information is being received;
>     in response to user input, designating at least a portion of the information as a label while the information is being received;
>     in response to user input, traversing a data structure and providing an indication of a location in the data structure;
>     in response to user input, storing the label at the location in the data structure; and
>     associating the label with the data. ('674 Patent at col. 18, ll. 3–19.)

Asserted independent claim 3 of the '674 Patent provides as follows:

> 3. Method for storing information provided by a user which comprises:
>     in response to user input, receiving and storing information;
>     in response to user input, designating the information as data while the information is being received;
>     in response to user input, conveying the stored information to the user and designating at least a portion of the stored information as a label while the stored information is being conveyed;
>     in response to user input, traversing a data structure and providing an indication of a location in the data structure;
>     in response to user input, storing the label at the location in the data structure; and
>     associating the label with the data. ('674 Patent at col. 18, ll. 23–38.)

The Court notes that the '674 Patent is demonstrably weak on its face, despite the initial presumptions created when this patent was issued by the PTO. The '674 Patent generically refers to a "data structure," but does not require such structure to be limited to a computer. The claims are not tied to a generic computer, let alone a specialized one. "Claim 1 essentially describes the

---

[4] Defendants also argue that eDekka's infringement case was objectively unreasonable because it "allowed [eDekka] to target virtually every e-commerce website" and "ignored the claims' critical limitation that every step is performed by the user." (Mot. at 12.) Given that this case is "exceptional" absent such a finding, the Court declines to address this argument or make this finding.

common process of receiving, labeling, and storing information, while Claim 3 encompasses retrieving such information." (§ 101 Opinion at 6–8 (holding that the claims would not prevent eDekka from obtaining a monopoly over the abstract idea of storing and labeling information).) The apparatus claims provide no additional features or meaningful limitations.

The Court did not need the benefit of claim construction to find that the claims were directed to an abstract idea. The '674 Patent claims were clearly directed toward unpatentable subject matter, and no reasonable litigant could have reasonably expected success on the merits when defending against the numerous § 101 motions filed in this case. *See, e.g.*, *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (in the context of infringement allegations, finding that, to be objectively baseless, "the infringement allegations must be such that 'no reasonable litigant could reasonably expect success on the merits.'" (citation omitted)).

However, rather than acknowledging the inherent weaknesses of the '674 Patent, eDekka proffered completely untenable arguments to the Court throughout the § 101 briefing process and at the September 10, 2015 hearing. For example, eDekka asserted that the patented claims "improve the functioning of technology" by reducing "the time to retrieve information and the amount of information that must be retrieved." (Dkt. No. 32 at 11, 15.) eDekka offered only vague support for this contention in its briefing and then broadly expanded on this idea at the hearing:

> [COUNSEL FOR EDEKKA]: [It] teaches a person who would program a computer how to program it in a way that uses a better database, and that database improves the functioning of the computer.
>
> THE COURT: So is the purpose of this patent a teaching tool for computer users?
>
> [COUNSEL FOR EDEKKA]: Yes, we would agree that it is.

5

> THE COURT: It's not simply to store and retrieve information, but it's to be an educational process for people that would use it?
>
> [COUNSEL FOR EDEKKA]: Well, it—it teaches someone skilled in computer programming a new method, a new way of doing things to make a computer store, organize, and retrieve data.
>
> THE COURT: Well, what I'm asking . . . is the teaching function that you're alluding to something that you believe is inventive and unconventional?
>
> [COUNSEL FOR EDEKKA]: Yes, Your Honor, we do.

(Dkt. No. 102 at 19:13–20:8.) Notwithstanding the above exchange, the Court found absolutely no basis in the claim language to support eDekka's newfound position that the '674 Patent was meant to serve as a teaching tool for computer users.

Additionally, eDekka argued that the '674 Patent claims "require[] a special purpose computer" and provided two wholly conclusory declarations to support the assertion. (Dkt. No. 94 at 1; Dkt. No. 32-1; Dkt. No. 94-1.)[5] However, the '674 Patent plainly does not require a computer. At best, the '674 Patent includes terms that "may vaguely allude to computer-based activity." (§ 101 Opinion at 7.) Additionally, at the § 101 hearing, counsel for eDekka admitted that "the claims do not . . . expressly state a computer." (Dkt. No. 102 at 16:21–24.) Counsel for eDekka also conceded that if the Court did not agree that a person of ordinary skill would find a computer necessary for the '674 Patent, then "the method claims would fall." (Dkt. No. 102 at 21:7–12.)

The Court finds that eDekka repeatedly offered insupportable arguments on behalf of an obviously weak patent. This causes the Court to question whether eDekka engaged in a reasonable and thorough pre-suit investigation regarding the § 101 standard and relevant authority before filing a significant number of lawsuits. In these particular and focused

---

[5] The Court notes that if the declarations are to be believed and the '674 Patent claims did require specialized software or a special purpose computer, then the '674 Patent claims would likely exclude the preferred embodiment.

circumstances, the Court identifies a clear need to advance considerations of deterrence. *See Octane Fitness*, 134 S. Ct. at 1756 n.6 ("[I]n determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" (citation omitted)). Accordingly, eDekka's unreasonable § 101 positions support an "exceptional" case finding.

## II. eDekka Litigated in an Unreasonable Manner

"[U]nder Octane Fitness, the district court must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination . . . ." *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015). "[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." *Id.* at 1350.

eDekka's litigation history in this District—which includes filing strikingly similar lawsuits against over 200 defendants—reflects an aggressive strategy that avoids testing its case on the merits and instead aims for early settlements falling at or below the cost of defense. Based upon the record of the above-captioned cases, as well as the Court's *in camera* review of eDekka's '674 Patent settlements to date, the Court finds a pattern of defendants that agreed to settlements at relatively early points in the litigation for amounts significantly below the cost of taking a patent case to trial. Further, on September 8, 2015, just two days before the September 10, 2015 § 101 hearing, counsel for eDekka contacted numerous defendants with offers to settle their cases for three-thousand dollars each. These offers represent extraordinarily low amounts.

7

Such offers remained open until they were withdrawn during the evening of September 9, 2015. This clearly suggests an intent to settle with the remaining defendants rather than defend the '674 Patent claims in court.

The Court finds that it is reasonable to conclude that eDekka acted with the goal of "exploiting the high cost to defend complex litigation" to extract "nuisance value settlement[s]" from defendants. *See Eon-Net v. Flagstar Bancorp*, 653 F.3d 1314, 1326–27 (Fed. Cir. 2011) (affirming the district court's finding of an "indicia of extortion" where a plaintiff filed over 100 lawsuits and "[e]ach complaint was followed by a 'demand for a quick settlement at a price far lower than the cost of litigation . . . .'" (citation omitted)).[6] Such tactics contribute significantly to the Court's finding that this case is "exceptional." *See id.* at 1328 ("[T]he appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith."); *see also MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920–21 (Fed. Cir. 2012) (affirming the district court's finding of litigation misconduct where the plaintiff "not only initiated a frivolous lawsuit" with regard to infringement allegations but also "persisted in advancing unfounded arguments that unnecessarily extended [the] litigation and caused . . . needless litigation expenses").

The Court takes no pleasure in reaching the above conclusions. This Court does not view every plaintiff's loss as an automatic indicator that the case is exceptional. A finding of exceptionality is something that this Court arrives at reluctantly, lest we unintentionally narrow the public's access to the courts by chilling future decisions to seek redress for a case in which success is not guaranteed. However, the threshold of exceptionality has been crossed by eDekka

---

[6] District courts may consider pre-*Octane Fitness* Federal Circuit case law for guidance in determining whether a case was litigated in an unreasonable manner. *SFA Sys.*, 793 F.3d at 1349.

in this case. A fair reading of the facts and the law in this specific context compels the Court to find that this is an "exceptional" case.

## CONCLUSION

Considering the totality of the circumstances, particularly eDekka's unreasonable § 101 positions and vexatious litigation strategy, the Court holds that the above-captioned cases are "exceptional" under 35 U.S.C. § 285 and **GRANTS** Defendants' Consolidated Motion for Attorneys' Fees. Defendants are directed to submit evidence concerning the amount of fees incurred. Such submission shall be made within fourteen (14) days of the date of this Order.

**So ORDERED and SIGNED this 17th day of December, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE